**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY D. JUSTICE, II, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| 1LIFE HEALTHCARE, INC., AMIR DAN RUBIN, PAUL R. AUVIL, MARK S. BLUMENKRANZ, BRUCE W. DUNLEVIE, KALEN F. HOLMES, DAVID P. KENNEDY, FREDA LEWIS-HALL, ROBERT R. SCHMIDT, SCOTT C. TAYLOR, and MARY ANN TOCIO, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 21, 2022 (the "Proposed Transaction"), pursuant to which 1Life Healthcare, Inc. ("1Life" or the "Company") will be acquired by Amazon.com ("Amazon") and Negroni Merger Sub, Inc. ("Merger Sub").

2. On July 20, 2022, 1Life's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Amazon and Merger Sub. Pursuant to the terms of the Merger Agreement, 1Life's stockholders will receive $18.00 in cash for each share of 1Life common stock they own.

3.  On August 24, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.  The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.  This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of 1Life common stock.

9.  Defendant 1Life is a Delaware corporation and a party to the Merger Agreement. 1Life's principal executive offices are located at One Embarcadero Center, Suite 1900, San Francisco, CA 94111. 1Life's common stock is traded on the NasdaqGS, which is headquartered

in New York, New York, under the ticker symbol "ONEM."

10. Defendant Amir Dan Rubin is Chair, Chief Executive Officer, and President of the Company.

11. Defendant Paul R. Auvil is a director of the Company.

12. Defendant Mark S. Blumenkranz is a director of the Company.

13. Defendant Bruce W. Dunlevie is a director of the Company.

14. Defendant Kalen F. Holmes is a director of the Company.

15. Defendant David P. Kennedy is a director of the Company.

16. Defendant Freda Lewis-Hall is a director of the Company.

17. Defendant Robert R. Schmidt is a director of the Company.

18. Defendant Scott C. Taylor is a director of the Company.

19. Defendant Mary Ann Tocio is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

21. 1Life is a national human-centered and technology-powered primary care organization with seamless digital health and inviting in-office care, convenient to where people work, shop, live, and click.

22. On July 20, 2022, 1Life's Board caused the Company to enter into the Merger Agreement.

23. Pursuant to the terms of the Merger Agreement, 1Life's stockholders will receive $18.00 in cash per share.

24. According to the press release announcing the Proposed Transaction:

Amazon (NASDAQ:AMZN) and One Medical (NASDAQ:ONEM) announced that they have entered into a definitive merger agreement under which Amazon will acquire One Medical. One Medical is a human-centered, technology-powered national primary care organization on a mission to make quality care more affordable, accessible, and enjoyable through a seamless combination of in-person, digital, and virtual care services that are convenient to where people work, shop, and live.

"We think health care is high on the list of experiences that need reinvention. Booking an appointment, waiting weeks or even months to be seen, taking time off work, driving to a clinic, finding a parking spot, waiting in the waiting room then the exam room for what is too often a rushed few minutes with a doctor, then making another trip to a pharmacy – we see lots of opportunity to both improve the quality of the experience *and* give people back valuable time in their days," said Neil Lindsay, SVP of Amazon Health Services. "We love inventing to make what should be easy easier and we want to be one of the companies that helps dramatically improve the healthcare experience over the next several years. Together with One Medical's human-centered and technology-powered approach to health care, we believe we can and will help more people get better care, when and how they need it. We look forward to delivering on that long-term mission."

"The opportunity to transform health care and improve outcomes by combining One Medical's human-centered and technology-powered model and exceptional team with Amazon's customer obsession, history of invention, and willingness to invest in the long-term is so exciting," said Amir Dan Rubin, One Medical CEO. "There is an immense opportunity to make the health care experience more accessible, affordable, and even enjoyable for patients, providers, and payers. We look forward to innovating and expanding access to quality healthcare services, together."

Amazon will acquire One Medical for $18 per share in an all-cash transaction valued at approximately $3.9 billion, including One Medical's net debt. Completion of the transaction is subject to customary closing conditions, including approval by One Medical's shareholders and regulatory approval. On completion, Amir Dan Rubin will remain as CEO of One Medical.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

25. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

26. As set forth below, the Proxy Statement omits material information.

4

27. First, the Proxy Statement omits material information regarding the Company's financial projections.

28. The Proxy Statement fails to disclose: (i) all line items used to calculate the financial projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

31. With respect to Morgan Stanley's Discounted Equity Value Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate and multiples used in the analysis; (ii) the net debt used in the analysis; and (iii) the number of fully diluted shares used in the analysis.

32. With respect to Morgan Stanley's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values of the Company; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iii) the net cash and future projected common equity issuance used in the analysis; and (iv) the number of fully diluted shares used in the analysis.

33. With respect to Morgan Stanley's Precedent Transactions – Premiums Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

34. With respect to Morgan Stanley's Broker Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

35. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36. Third, the Proxy Statement fails to disclose the timing and nature of the past services Morgan Stanley provided to the parties to the Merger Agreement and their affiliates.

37. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

38. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and 1Life

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. 1Life is liable as the issuer of these statements.

41. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

42. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

44. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

45. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

46. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

### COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of 1Life within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of 1Life and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

51. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.   Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 24, 2022

**RIGRODSKY LAW, P.A.**

By:  */s/ Gina M. Serra*
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Attorneys for Plaintiff*